**BUCHART HORN, INC., Petitioner**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 24, 2010.
Decided July 13, 2010.

John J. Sylvanus, York, for petitioner.

Jody L. King, Asst. Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge PELLEGRINI.

Buchart Horn, Inc. (Contractor) appeals from an order of the Board of Claims (Board) granting the Pennsylvania Department of Transportation's (PennDOT) preliminary objections for failure to exhaust administrative remedies and comply with Section 1712.1 of the Procurement Code[1] and dismissing Contractor's claim with prejudice.

Contractor is a consulting engineering firm that entered into a series of contracts

---

1. 62 Pa.C.S. § 1712.1. That section provides:

(a) Right to claim.—A contractor may file a claim with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth.

(b) Filing of claim.—A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.

(c) Contents of claim.—A claim shall state all grounds upon which the contractor asserts a controversy exists.

(d) Determination.—The contracting officer shall review a claim and issue a final determination in writing regarding the claim within 120 days of the receipt of the claim unless extended by consent of the contracting officer and the contractor. If the contracting officer fails to issue a final determination within the 120 days unless extended by consent of the parties, the claim shall be deemed denied. The determination of the contracting officer shall be the final order of the purchasing agency.

(e) Statement of claim.—Within 15 days of the mailing date of a final determination denying a claim or within 135 days of filing a claim if no extension is agreed to by the parties, whichever occurs first, the contractor may file a statement of claim with the board.

(f) Applicability.—The provisions of 2 Pa. C.S. (relating to administrative law and procedure) shall not apply to this section.

for materials inspection services for PennDOT whereby Contractor supplemented PennDOT's inspection staff by providing qualified individuals to inspect materials delivered for PennDOT projects. The two contracts relevant to this case were a 2000 contract that provided that Contractor would provide inspection services for five years worth a maximum amount of $7,120,857.60 and a 2005 contract that provided that Contractor would provide services for three years worth a maximum amount of $2,195,135.89.

In January 2007, PennDOT's Comptrollers Office notified Contractor that PennDOT had requested it to perform an audit on the 2000 and 2005 contracts to determine if Contractor's inspection personnel invoiced on the contracts had the requisite experience and credentials to justify the price at which they were billed. PennDOT presented the results of the audit to Contractor at a May 31, 2007 meeting. According to PennDOT, the audit revealed that while many of the inspectors were qualified to perform the inspections, they did not have the wage classifications set forth in the contracts. As a result, PennDOT demanded reimbursement of $277,304 for the alleged invoice overcharges.

Contractor sent a letter to PennDOT on July 20, 2007, taking exceptions to the audit findings. Several meetings and letters on the subject then ensued, including

an October 9, 2007 formal written demand for reimbursement by PennDOT that threatened debarment and a December 12, 2007 letter by Contractor contesting that it was required to reimburse anything. On June 11, 2008, PennDOT sent Contractor a letter demanding the full refund payment within 15 days and again threatening to begin debarment proceedings if Contractor did not comply.[2] On June 23, 2008, Contractor paid PennDOT $277,304 under protest, reserving its right to make a claim against PennDOT with the Board. Contractor subsequently did file a claim with the Board on December 19, 2008, seeking reimbursement of the full amount it paid to PennDOT under protest.

PennDOT then filed preliminary objections arguing that the Board of Claims lacked subject matter jurisdiction over Contractor's claim because it failed to exhaust its administrative remedies by bringing its claim directly to the Board without first bringing it to a PennDOT contracting officer as required by Section 1712.1(b) of the Procurement Code.[3] PennDOT also argued that even if any of the interactions between it and Contractor could be viewed as a claim and the June 11, 2008 letter as a final determination, Contractor missed the 15–day deadline to file a claim with the Board,[4] and its claim should be dismissed for that reason.

Contractor responded that "[w]hile there may be technical merit" to the posi-

**2.** Debarment disqualifies a contractor from receiving future Commonwealth contracts. We make no comment regarding whether PennDOT has the ability to pursue debarment following the non-payment by a contractor of a disputed amount under a contract.

**3.** Section 1724 of the Procurement Code, 62 Pa.C.S. § 1724, provides, in relevant part:

(a) Exclusive Jurisdiction—The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

(1) A contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies).

\* \* \*

(c) Limitations—The board shall have no power and exercise no jurisdiction over a claim asserted under subsection (a)(1) unless it is filed with board in accordance with section 1712.1.

**4.** 62 Pa.C.S. § 1712.1(e).

tion that it did not exhaust its administrative remedies, "the liberal interpretation requirement of the law" would allow this defect to pass because it had already had numerous discussions with PennDOT regarding the claim, and PennDOT was firm in its insistence that Contractor owed it the full amount. (Reproduced Record at 52a.) To do anything more before filing its claim with the Board would have been pointless and, consequently, it did not need to pursue its administrative remedies. Because it fulfilled the "spirit" of exhausting its administrative remedies, Contractor argued that no matter what date the claim was denied, a claim could never be out-of-time as Section 1712.1(e) states that "the contractor *may* file a statement of claim with the board." (Emphasis added.) The 15–day statutory appeal period is permissive, and it could file an appeal with the Board at any time whatsoever without worry about the purported time limitation.

The Board first addressed the issue of whether failure to exhaust administrative remedies or failure to file a timely appeal would deprive it of subject matter jurisdiction. It concluded that such procedural defects would not divest it of subject matter jurisdiction but would divest it of personal jurisdiction. Because a lack of subject matter jurisdiction can never be waived but a lack of personal jurisdiction can be waived, the Board allowed Contractor to file an amended claim to determine if PennDOT, through its actions, voluntarily submitted itself to the personal jurisdiction of the Board. It then issued a separate opinion and order addressing that issue.[5] Next, the Board held that the 15–day period in which to file a claim with

the Board following an adverse determination by an agency was mandatory, operating as a bar to filing an appeal beyond the 15–day period.

The Board then considered two scenarios concerning when Contractor's claim accrued and whether or not Contractor had properly exhausted its administrative remedies. Under the first scenario, the Board considered the October 9, 2007 letter by PennDOT to be the point in time at which Contractor's claim accrued. Contractor had six months to file a claim with PennDOT's contracting officer to contest this determination, which it did with its December 12, 2007 letter contesting the reimbursement. The Board then considered PennDOT's June 11, 2008 letter to be a final determination of the December 12, 2007 claim, which would give Contractor 15 days (until June 26, 2008) to file a claim with the Board. Under this scenario, Contractor fulfilled its requirement to exhaust administrative remedies, but its claim would be barred because it did not timely file its appeal to the Board, thereby depriving the Board of jurisdiction.

 Under the Board's second scenario, none of the communications between Contractor and PennDOT consisted of the accrual of a claim until Contractor's June 23, 2008 payment of $277,304 to PennDOT. At that time, the claim accrued and Contractor had six months to file a claim with the PennDOT contracting officer. Because Contractor's next action was to file its claim with the Board, it did not exhaust its administrative remedies, depriving the Board of jurisdiction to hear the claim. Because the Board lacked jurisdiction to

---

**5.** The Board erred in holding that a failure to exhaust administrative remedies results in a lack of personal jurisdiction over the agency rather than a lack of subject matter jurisdiction over the claim. However, the Board's ultimate conclusion that it had no personal

jurisdiction over PennDOT rather than no subject matter jurisdiction over the claim does not affect the outcome of this case other than needlessly complicating the proceedings before the Board.

hear the claim under either scenario, it granted PennDOT's preliminary objections and dismissed the claim. This appeal followed.[6]

On appeal,[7] Contractor admits that it failed to exhaust its administrative remedies under Section 1712.1(b) but fulfilled the spirit, if not the express technical requirements through the numerous letters and meetings between the parties. These actions put PennDOT on notice of the claim and gave it an opportunity to accept or reject the claim. Exhausting administrative remedies, however, before bringing a claim to the Board is not optional. Section 1712.1(b) provides, "A claim shall be filed *with the contracting officer* within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum." (Emphasis added.) Before a contractor can bring a claim, we have held that "Section 1712.1(b) *mandates* that an aggrieved contractor *must* initially file a claim *with the Commonwealth contracting officer* within six months of the *date of accrual.*" *Department of General Services v. Pittsburgh Building Company*, 920 A.2d 973, 981 (Pa.Cmwlth.2007). (Emphasis added.)

■■ A claim date of accrual for purposes of the Board of Claims' six-month statute of limitations is:

[W]hen 1) a claimant is first able to litigate his or her claim, e.g., when the amount due under the claim is known and the claimant is capable of preparing a concise and specific written statement detailing the injury, and 2) the claimant is affirmatively notified that he or she will not be paid by the Commonwealth. *Darien Capital Management, Inc. v. Public School Employes' Retirement System*, 549 Pa. 1, 6, 700 A.2d 395, 397 (1997); *John XXIII Home v. Department of Public Welfare*, 934 A.2d 198, 202 (Pa.Cmwlth. 2007). In the case of a disputed reimbursement from a contractor to the Commonwealth, the date of accrual would be when the claimant is affirmatively notified that he or she is required to reimburse the Commonwealth. *See* 62 Pa.C.S. § 1712.1(a).

■ In the present case, Contractor's claim accrued when it received the October 9, 2007 letter from PennDOT. This letter affirms the conclusion of the auditor that Contractor owed PennDOT $277,304 for overbilling for some of its inspectors and that PennDOT would initiate debarment proceedings against Contractor if it was not paid. Pursuant to Section 1712.1(b), Contractor then had six months, or until April 9, 2008, to file a claim with PennDOT's contracting officer or its claim would be waived. While it contends that it fulfilled the purpose of Section 1712.1(b) by engaging in correspondence with PennDOT that made it clear that it opposed

---

**6.** Our review of an order sustaining preliminary objections and dismissing a complaint is limited to determining whether the Board abused its discretion or committed an error of law. *Petty v. Hospital Service Association of Northeastern Pennsylvania*, 967 A.2d 439 (Pa. Cmwlth.2009). In reviewing preliminary objections, all well pleaded relevant and material facts are to be considered as true, and preliminary objections shall only be sustained when they are free and clear from doubt. *Id.* Such review raises a question of law as to

which our standard of review is *de novo* and our scope of review is plenary. *Id.*

**7.** On appeal, Contractor still argues that it could file a claim with the Board at any time because the statute states that the 15–day period in which to file a claim with the Board is discretionary and because it contains the words "may file" rather than "shall file" or "must file." Because of the way we resolve this case, we need not consider this issue.

reimbursing PennDOT for the alleged billing problems, neither Section 1712.1(b) nor *Pittsburgh Building Company* leave room for alternative methods of exhausting administrative remedies before filing a claim with the Board, but instead requires the filing of a protest with the contracting officer.

Because the Board has no power or jurisdiction over a claim where administrative remedies have not been exhausted, it correctly granted PennDOT's preliminary objections and dismissed Contractor's claim. As such, its order is affirmed.

### ORDER

AND NOW, this *13th* day of *July,* 2010, the order of the Board of Claims dated September 24, 2009, is affirmed.